State of MAINE; Maine State Chamber of Commerce; Atlantic Salmon of Maine, L.L.C.; Stolt Sea Farm, Inc.; Maine Aquaculture Association; Maine Pulp & Paper Association; Wild Blueberry Commission of Maine; Jasper Wyman & Sons; Cherryfield Foods, Inc., Plaintiffs,

v.

Gale NORTON, in Her Official Capacity as the Secretary of the United States Department of the Interior; United States Department of the Interior; Donald L. Evans, in His Official Capacity as the Secretary of the United States Department of Commerce; United States Department of Commerce; Marshall Jones, in His Official Capacity as the Acting Director of the United States Fish and Wildlife Service; United States Fish and Wildlife Service; William T. Hogarth, in His Official Capacity as the Acting Assistant Administrator for Fisheries of the National Marine Fisheries Service; and National Marine Fisheries Service,[1] Defendants.

No. CIV 00–250–B–C.

United States District Court,
D. Maine.

April 11, 2001.

---

**1.** On March 22, 2000, the Court consolidated this case with Case 00–254–B–C. *See* Memorandum of Decision and Order (Docket No. 6, 00–254–B–C) (hereinafter "Consolidation Order"). The named parties reflect the decision in the Court's Consolidation Order, as well as the fact that the individually named Defendants have changed as a result of a new presidential administration. *See* FED. R. CIV. P. 25(d)(1); Defendants' Answer (Docket No. 9, 00–250–B–C) at 1 n. 1. At the time that Case 00–250–B–C Defendants filed their Answer, on February 5, 2000, Marshall Jones and William T. Hogarth served, respectively, as Acting Director of the United States Fish and Wildlife Service and Acting Assistant Administrator for Fisheries of the National Marine Fisheries Service. *See id.* It is the parties' responsibility to update the record when these positions have been permanently filled.

Christopher C. Taub, Asst. Atty. Gen., Augusta, ME, Paul A. Lenzini, Alexandria, VA, Peter W. Culley, Pierce, Atwood, Portland, ME, for plaintiffs.

Catherine R. Lewers, U.S. Department of Justice, Environment & Natural Resource Division, Matthew Love, U.S. Department of Justice, Environmental & Natural Resources Div., Washington, DC, for defendants.

Kirk G. Siegel, Hanley & Assoc., South Paris, ME, Howard M. Crystal, Eric Glitzenstein, Meyer & Glitzenstein, Washington, DC, for movants.

## MEMORANDUM OF DECISION AND ORDER

CARTER, District Judge.

Now before the Court in this consolidated challenge to Defendants' final rule listing the Atlantic salmon population in various Maine rivers as a distinct population segment endangered under the Endangered Species Act, 16 U.S.C. §§ 1531 *et seq.* (hereinafter the "ESA"), *see* 65 Fed.Reg. 69,459 (Nov. 17, 2000), is a Motion to Intervene by the following organizations: Defenders of Wildlife, Biodiversity Legal Foundation, Conservation Action Project, Forest Ecology Network, Coastal Waters Project, David Carle, Charles Fitzgerald, Douglass Watts, and Arthur Taylor (hereinafter "the Proposed Intervenors"). *See* Motion to Intervene by Defenders of Wildlife, Biodiversity Legal Foundation, Conservation Action Project, Forest Ecology Project, Coastal Waters Project, David Cole, Charles Fitzgerald, Douglas Watts, and Arthur Taylor (Docket No. 5, 00–250–B–C) (hereinafter "Case 00–250–B–C Motion to Intervene"); Motion to Intervene by Defenders of Wildlife, Biodiversity Legal Foundation, Conservation Action Project, Forest Ecology Project, Coastal Waters Project, David Cole, Charles Fitzgerald, Douglas Watts, and Arthur Taylor (Docket No. 7, 00–254–B–C) (hereinafter "Case 00–254–B–C Motion to Intervene").[2] For the reasons that follow, the Court will deny the Proposed Intervenors' Motion to Intervene.

## BACKGROUND

On November 17, 2000, Defendants National Marine Fisheries Service and United States Fish and Wildlife Service (hereinafter "the Services") issued a final rule listing the Gulf of Maine Atlantic salmon population as a distinct population segment eligible for protection under the ESA. *See* 65 Fed.Reg. 69,459 (November 17, 2000) (to be codified at 50 C.F.R. pt. 224). This rule identifies eight Maine rivers that currently contain the Gulf of Maine Atlantic salmon population, and it also appears to allow the future identification of additional rivers that contain this population. *See id.* at 69,459. This rule became effective on December 18, 2000. *See id.* Plaintiffs, the State of Maine, the Maine State Chamber of Commerce, and various Maine businesses, challenge that listing decision in the current lawsuit. This challenge initially began with two separate lawsuits, Case 00–250–B–C and Case 00–254–B–C, which the Court consolidated into one action on March 22, 2000. *See* Consolidation Order. The Court's Consolidation Order designated Case 00–250–B–C as the lead case. *See id.*[3] Prior to the Court's Consolidation Order, the Proposed Intervenors filed motions to intervene in each of the now-consolidated cases. *See* Case 00–250–B–C Motion to Intervene; Case 00–254–B–C Motion to Intervene. Defendants filed a Notice of Non–Opposition to Defenders of Wildlife's Motion to Intervene in Case 00–250–B–C (Docket No. 11) (hereinafter "Defendants' Notice of Non–Opposition") before the consolidation of the cases, but they have not filed a response in Case 00–254–B–C. Subsequent to the Court's Consolidation Order, Plaintiffs filed a Response to Motion to Intervene (Docket No. 15) (hereinafter "Consolidated Plaintiffs' Response"). *See also* Plaintiff's Response to Motion to Intervene Filed by Defenders of

---

**2.** Because the Court has consolidated Cases 00–250–B–C and 00–254–B–C, and the identity of the Proposed Intervenors is the same in both cases, unless otherwise indicated, the Court will hereinafter refer to the Proposed Intervenors' dual motions as a singular Motion to Intervene.

**3.** Accordingly, throughout the remainder of this Memorandum of Decision and Order, unless the Court identifies papers as filed in Case 00–254–B–C, the papers were filed in Case 00–250–B–C.

Wildlife *et al.* (Docket No. 8) (hereinafter "State of Maine's Response").

The controversy over the Services' listing of the Gulf of Maine Atlantic salmon population as an endangered species under the ESA did not begin with the December 18, 2000, listing. In 1994, after receiving a petition to list under the ESA "the Atlantic salmon throughout its historic range in the contiguous [United States]," 65 Fed.Reg. at 69,462, the Services published a notice in the Federal Register indicating the possibility that such a listing was warranted. *See* 59 Fed. Reg. 3,067 (January 20, 1994). In 1995, the Services published a notice in the Federal Register setting forth their conclusion that such a listing was not warranted because the Atlantic salmon population throughout the entire region did not meet the definition of a species under the ESA. *See* 60 Fed.Reg. 14,410 (Mar. 17, 1995). In this same notice, the Services also set forth their conclusion that the Atlantic salmon population in seven Maine rivers did meet the criteria to constitute a species within the meaning of the ESA. *See id.* at 14,411.[4] In September of 1995, the Services then published a proposed rule to list this distinct population segment as threatened under the ESA. *See* 60 Fed. Reg. 50,530 (Sept. 29, 1995). This proposal invited the State of Maine to develop a conservation plan that, if approved, would allow Maine to define the acceptable manner for conducting activities without violating the ESA. *See id.* The State of Maine did submit such a plan and, in 1997, the Services withdrew the proposed rule to list the Atlantic salmon population in the seven Maine rivers as threatened under the ESA. *See* 62 Fed.Reg. 66,325 (Dec. 18, 1997). At this time, the Services named the Atlantic salmon population at issue the "Gulf of Maine Distinct Population Segment" to reflect the possibility that Atlantic salmon in additional rivers might be added to the population. *See id.* at 66,337.

In 1999, two lawsuits were filed in the District of Columbia District Court against Defendants, challenging the Services' 1997 decision to withdraw the listing proposal. *See* Complaint (Docket No. 1, 00–254–B–C) ¶¶ 65–66.[5] The Proposed Intervenors were Plaintiffs in one of those lawsuits. *See* District of Columbia Complaint No. 1. Those lawsuits were consolidated into one case, *see* Complaint (Docket No. 1, 00–254–B–C) ¶ 66, and the State of Maine was given leave to intervene in that case. *See* Complaint (Docket No. 1) ¶ 42. During the course of that litigation, on November 17, 1999, the Services announced that the Gulf of Maine Distinct Population Segment was "in danger of extinction" and proposed a rule listing this segment as endangered under the ESA. 64 Fed.Reg. 62,627 (November 17, 1999).[6] On June 14, 2000, the parties in the District of Columbia litigation entered into a court-endorsed stipulation in which they agreed to stay further proceedings in the lawsuit pending Defendants' decision to list or withdraw the proposed rule. *See* Stipulation, Memorandum in Support of Motion to Intervene of Defenders of Wildlife *et al.* (Docket No. 6), Attachment 1 (hereinafter "District of Columbia Stipulation"). In the stipulation, Defendants promised to submit for publication either a final regulation listing the Atlantic salmon population as an endangered or threatened species, or a notice of their decision to withdraw the proposed regulation by November 17, 2000. *See id.* On November 17, 2000, the Services published the final rule at issue in the instant case. *See* 65 Fed.Reg. at 69,459.

4. These rivers included the Dennys, East Machias, Machias, Pleasant, Narraguagus, Ducktrap, and Sheepscot Rivers. *See* 60 Fed.Reg. at 14,-411.

5. Although only one of the Complaints from these lawsuits has been presented to the Court, *see* Complaint, *Defenders of Wildlife et al. v. Bruce Babbitt et al.*, No. 99CV00206 (D.D.C. 1999), Memorandum in Support of Motion to Intervene of Defenders of Wildlife *et al.* (Docket No. 6), Attachment 3 (hereinafter "District of Columbia Complaint No. 1"), at this point, the Court will accept Plaintiffs' allegations as true for the purposes of describing the procedural posture of the instant case.

6. While the Services declined to include salmon in the Penobscot River in the proposed distinct population segment, the Services did add salmon in the Cove Brook to the distinct population segment. *See* 64 Fed.Reg. at 62,627.

## DISCUSSION

The Proposed Intervenors move for both intervention of right under Federal Rule of Civil Procedure 24(a)(2) and permissive intervention under Federal Rule of Civil Procedure 24(b)(2). Defendants do not oppose permissive intervention and take no position with regard to intervention of right. *See* Defendants' Notice of Non–Opposition. Plaintiffs do not take a position with regard to either intervention of right or permissive intervention, provided that intervention does not delay the resolution of the case. *See* State of Maine's Response at 2. Plaintiffs do, however, request that if the Court does allow intervention, the Court limit the intervention such that all intervening organizations and individuals constitute one entity for all procedural purposes. *See* Consolidated Plaintiffs' Response at 3.

### A. Intervention of Right

Rule 24(a) sets forth four requirements for intervention of right in the absence of a federal statute granting intervention. *See* FED. R. CIV. P. 24(a)(2). First, the application must be timely. *See id.* Second, the applicant must "claim[ ] an interest relating to the property or transaction which is the subject of the action." *Id.* Third, the applicant must be "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." *Id.* Fourth, the applicant must demonstrate that the existing parties to the litigation will not adequately represent its interest. *See id. See also Daggett v. Comm'n on Governmental Ethics and Election Practices, et al.*, 172 F.3d 104, 111 (1st Cir.1999) (explaining that, although the language of the fourth requirement of Rule 24(a)(2) "is prefaced with the word 'unless,' the case law is settled that the applicant for intervention must identify any inadequacy of representation").

The timeliness of the Proposed Intervenors' application to intervene is not at issue, as they filed their motions to intervene within two months of the inception of Case 00–254–B–C and within four months of the inception of Case 00–250–B–C, and prior to any significant substantive motions by the parties to these cases.[7] The Proposed Intervenors claim two separate interests in support of their motion to intervene.[8] First, the Proposed Intervenors claim an interest in the relief that they obtained in the District of Columbia Stipulation. Second, the Proposed Intervenors claim a longstanding and demonstrated interest in protecting, studying, and observing the Atlantic salmon population that is now protected by the challenged rule. The Court will consider each of these asserted interests in turn.

The Proposed Intervenors claim an interest in the terms of the District of Columbia Stipulation, which required Defendants to make a decision on whether to list the Gulf of Maine Atlantic salmon population as a distinct population segment endangered under the ESA by November 17, 2000. The Proposed Intervenors regard this promise as relief obtained from the District of Columbia litigation, and they frame the instant lawsuit as an "express[ ] challenge[ ]" and a "collateral attack" on that relief. Memorandum in Support of Motion to Intervene at 5–6. The Proposed Intervenors argue that the relief sought by Plaintiffs in the instant case would impair and impede their ability to protect this interest because it would effectively undo the Services' November 2000 listing

---

7. Prior to the Proposed Intervenors' motions to intervene, the parties had moved to consolidate the cases and transfer them to the District of Columbia District Court, and Defendants had filed an answer in Case 00–254–B–C. However, the parties had not yet filed any motions pertaining to the merits of the case, such as motions to dismiss or motions for summary judgment.

8. The Proposed Intervenors filed memoranda in support of their motions to intervene in both 00–250–B–C and 00–254–B–C. *See* Memorandum in Support of Motion to Intervene of Defenders of Wildlife *et al.* (Docket No. 6); Memorandum in Support of Motion to Intervene of Defenders of Wildlife *et al.* (Docket No. 8, 00–254–B–C). With the exception of a few details scattered throughout the Proposed Intervenors' discussion of facts and procedural history, these memoranda contain essentially the same information and advance identical arguments. In discussing the Proposed Intervenors' arguments, the Court will cite to the memorandum filed in Case 00–250–B–C, hereinafter referred to as "Memorandum in Support of Motion to Intervene."

decision, one alternative decision contemplated by the stipulation. Although Plaintiffs do not oppose intervention of right on this ground, they dispute the Proposed Intervenors' characterization of the instant lawsuit as an attempt to collaterally attack and take away relief obtained in the District of Columbia litigation. *See* State of Maine's Response at 1; Consolidated Plaintiffs' Response at 2.

█ The Court of Appeals for the First Circuit has "emphasized that '[t]here is no precise and authoritative definition of the interest required to sustain a right to intervene,'" and it has "reiterat[ed] 'that the intervenor's claims must bear a sufficiently close relationship to the dispute between the original litigants' and ... 'must be direct, not contingent.'" *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 42 (1st Cir.1992) (citing *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989)). However, the Court has explicitly rejected a narrow reading of Rule 24(a)(2)'s interest requirement. *See Daggett*, 172 F.3d at 110. The protection of contractual rights may constitute an interest within the meaning of Rule 24(a)(2). *See Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1495 (9th Cir.1995) (listing cases which have recognized an interest in protecting contractual rights).

Under this reading of Rule 24(a)(2)'s interest requirement, the Proposed Intervenor's claimed interest in the terms of the District of Columbia Stipulation does constitute an interest sufficiently related to the instant litigation to support intervention of right. However, the Court concludes that the disposition of the instant litigation will not have any practical impediment or impairment on the Proposed Intervenors' ability to protect their claimed interest. In the District of Columbia Stipulation, Defendants promised *only* to make a decision by November 17, 2000, regarding *whether* to list the Gulf of Maine Atlantic salmon as endangered or threatened. *See* District of Columbia Stipulation at 3. The Proposed Intervenors did not obtain relief in the form of a promise that the Gulf of Maine Atlantic salmon would be listed as endangered or threatened. *See id.* Moreover, in the District of Columbia Stipu-

lation, the Proposed Intervenors did not agree to withdraw the District of Columbia litigation, but only agreed to "stay all aspects of this litigation" until Defendants decided *whether* to list the Gulf of Maine Atlantic salmon population as endangered or threatened. *Id.* Defendants did satisfy the terms of the District of Columbia Stipulation by making their final listing decision on November 17, 2000, and the instant lawsuit will not undo the fact that a listing decision was made by that date. The Court recognizes that the instant lawsuit does seek declaratory and injunctive relief against the November 17, 2000, listing decision and challenges the lawfulness of Defendants' promise to issue a rule by this date. *See* Complaint at 31, ¶¶ 51, 112. However, despite Plaintiffs' position against the Services' final decision to list and promise to decide, the Proposed Intervenors have already obtained the relief that they were granted under the terms of the stipulation. Additionally, because the Proposed Intervenors agreed only to stay the District of Columbia litigation until the Services had decided whether to issue a final rule, the Court is not convinced that the Proposed Intervenors can no longer seek recourse in the District of Columbia District Court. Hence, the Court finds that the Proposed Intervenors do not have the right to intervene under Rule 24(a)(2) to protect their claimed interest in the relief they obtained from the District of Columbia Stipulation.

The Court, thus, turns to the Proposed Intervenors' claimed interest in protecting, studying, and observing the now-protected Gulf of Maine Atlantic salmon population. Specifically, the Proposed Intervenors assert that since 1993 they have worked to obtain federal protection for Atlantic salmon under the ESA and that they have an interest in studying and observing the Atlantic salmon population in rivers in which the Gulf of Maine Distinct Population Segment now enjoys federal protection. The Proposed Intervenors offer declarations of two individuals in support of this claimed interest. *See* Declaration of David Carle, Memorandum in Support of Motion to Intervene, Attachment 2 (hereinafter "Carle Declaration"); Declaration of Douglas Watts, Memorandum in Sup-

port of Motion to Intervene, Attachment 6 (hereinafter "Watts Declaration").

As discussed *supra*, the Court of Appeals for the First Circuit has rejected a narrow reading of Rule 24(a)'s interest requirement. *See Daggett*, 172 F.3d at 110. That court has yet to resolve whether applicants claiming intervention of right must also have standing in order to proceed. *See id.* at 109. *See also Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 33–34 (1st Cir.2000) (declining to determine whether standing is required for intervention of right because "in the ordinary case, an applicant who satisfies the 'interest' requirement of the intervention rule is almost always going to have a sufficient stake in the controversy to satisfy Article III as well"). In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562–65, 112 S.Ct. 2130, 2137–39, 119 L.Ed.2d 351 (1992), the Supreme Court indicated that organizations claiming a temporally or geographically remote interest in a species may not have a sufficient injury-in-fact to satisfy the standing requirements of Article III. The declarations submitted by David Carle and Douglas Watts appear to satisfy *Lujan's* injury-in-fact requirement, for these proposed intervenors claim that they currently reside near, observe, photograph, study, and write about the now-protected species. *See* Carle Declaration; Watts Declaration; *Lujan*, 504 U.S. at 566, 112 S.Ct. at 2139 ("It is clear that the person who observes or works with a particular animal threatened by a federal decision is facing perceptible harm, since the very subject of his interest will no longer exist."). However, these individuals comprise only two of the Proposed Intervenors. Although David Carle serves as Executive Director of Conservation Action Project, *see* Carle Declaration ¶ 2, even if his affidavit somehow supported the Conservation Action Project's standing, the submitted affidavits would still fail to support the asserted injury-in-fact of six of the Proposed Intervenors. Moreover, issues of organizational standing remain to be briefed by the Proposed Intervenors, leaving the Court uncertain as to whether the organizations proposing to intervene seek to intervene on behalf of themselves or their members, and whether they would have standing to do either. *See generally Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343–44, 97 S.Ct. 2434, 2441–42, 53 L.Ed.2d 383 (1977); *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). However, because the factual requirements for establishing standing vary depending on the stage of the litigation, *see Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136, the lawsuit remains at the pleading stage, and none of the parties have opposed intervention on standing grounds, the Court will assume, without deciding, that the Proposed Intervenors' claimed interest in protecting, studying, and observing the Gulf of Maine Atlantic salmon satisfies the injury-in-fact requirement of Article III. The Court will also assume that the Proposed Intervenors' joint and conclusory assertion of this interest in their Memorandum in Support of the Motion to Intervene satisfies the "interest relating to the property or transaction which is the subject of the action" requirement of Rule 24(a)(2).

■ Because Plaintiffs seek declaratory and injunctive relief against the November 2000 final listing of the Gulf of Maine Atlantic salmon population as endangered under the ESA, the instant litigation very well may impair or impede the Proposed Intervenors' ability to protect their interest in protecting the Gulf of Maine Atlantic salmon population. However, the Proposed Intervenors have not demonstrated to the Court that Defendants will fail to adequately protect their claimed interest. The Proposed Intervenors set forth two reasons why the Court should view Defendants' representation as inadequate under Rule 24(a). First, the Proposed Intervenors point to Defendants' history of proposing and withdrawing rules listing the Gulf of Maine Atlantic salmon population as endangered under the ESA, and contrast this intermittent history with their consistent position in favor of protection of Atlantic salmon. The Proposed Intervenors also maintain that, in an effort to undermine Defendants' November 2000 listing decision, Plaintiffs will likely point to the discrepancy between Defendants' 1997 withdrawal decision and Defendants' 2000 listing decision. The Proposed Intervenors argue that while Defen-

dants will be constrained to defend both of those decisions, the Proposed Intervenors plan to argue that the correct decision all along would have been to list the Gulf of Maine Atlantic salmon population as endangered.

The Proposed Intervenors urge the Court to hold them to a minimal burden of demonstrating the inadequacy of representation, in which they must show only that the "'representation [of their interest] may be inadequate.'" Memorandum in Support of Motion to Intervene at 8 (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972)). However, two presumptions operate against the Proposed Intervenors' assertions of inadequacy. First, "adequate representation is presumed where the goals of the applicants are the same as those of the plaintiff or defendant." *Daggett*, 172 F.3d at 111. In this case, the Proposed Intervenors share the same ultimate goal as Defendants: preserving the November 17, 2000, final listing of the Gulf of Maine Atlantic salmon population as endangered under the ESA. Second, "the government in defending the validity of the statute is presumed to be representing adequately the interests of all citizens who support the statute." *Id.* In this case, Defendants, governmental entities and employees, are defending the validity of a final rule. While these presumptions can be rebutted, *see id.*, the Proposed Intervenors have failed to do so in this case. The Court does not find the Proposed Intervenors' first ground for asserting inadequacy at all convincing. Although the Federal Defendants did withdraw their 1995 proposal to list as endangered the Atlantic salmon population in the seven Maine rivers, a decision to withdraw a proposed rule does not serve as any indication of a present lack of resolve in the Defendants' commitment to defend their standing, final listing decision. Nor is the Court convinced by the Proposed Intervenors' argument regarding the potentially different tactical approaches to addressing the

alleged discrepancy between the 1997 withdrawal decision and the 2000 listing decision. "[T]he use of different arguments as a matter of litigation judgment is not inadequate representation *per se.*" *Id.* at 112. *See also Pharm. Research and Mfrs. of America v. Comm'r, Maine Dep't of Human Servs.*, No. 00–157BH, 2000 WL 1844663, at *1 (D.Me. 2000). At this time, the Court is not convinced that the potential differences in litigation strategy will result in inadequate representation.[9] Finally, the Court notes that the Proposed Intervenors also allude to the possibility of inadequacy of representation due to a change in administration, but at this time, the Proposed Intervenors have not presented the Court with any evidence of the new administration's inadequacy in defending the November 2000 listing decision.

**B. Permissive Intervention**

Under Rule 24(b)(2), a court may allow intervention "[w]hen an applicant's claim or defense and the main action have a question of law or fact in common." A court must consider the potential of delay or prejudice to the existing parties, but otherwise has broad discretion in deciding whether to allow intervention. *See* Fed.R.Civ.P. 24(b)(2); *Daggett*, 172 F.3d at 112. The Proposed Intervenors assert that their claims share questions of law or fact in common with those of the parties in the instant case, and urge the Court to grant them permissive intervention because they offer a unique perspective on the following aspects of the case: the District of Columbia litigation, Defendants' final decision to list the Gulf of Maine Atlantic salmon population as endangered, and the need to protect the Gulf of Maine Atlantic salmon population. The Court agrees with the Proposed Intervenors that their claims involve questions of law or fact in common with those of the parties to this case; in fact, the Court finds that the claims asserted by the Proposed Intervenors are nearly identical to those of Defendants. Given the similarity of the goals of the Defendants and those of the

---

**9.** The Court is aware that the grounds for overcoming the presumptions of adequacy are not limited to the three grounds cited in *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir.1979). *See Daggett*, 172 F.3d at 111.

Nevertheless, the Court determines that the Proposed Intervenors have not set forth any grounds that convince it that Defendants are not "prepared to defend [the listing decision] in full." *Id.* at 112.

**30**

Proposed Intervenors, the Court concludes that the granting of permissive intervention would not enhance the resolution of the case in any significant way. Rather, the Court believes that adding another party to the case to assert the same arguments would only result in delay and complication of the proceedings without serving to advance additional rights. While the Proposed Intervenors may, at some point in the litigation, offer a perspective or arguments different from those of the parties that may indeed be helpful to the fair and just resolution of the issues presented in this case, participation as *amicus* will allow the Proposed Intervenors to present such a position to the Court. On a proper application, the Court will grant the Proposed Intervenors "*amicus* plus" status. *See Pharm. Research and Mfrs. of America,* 2000 WL 1844663, at *3.

### CONCLUSION

Because the Court finds that Defendants will adequately represent the interests of the Proposed Intervenors and has not discerned a persuasive reason to allow permissive intervention, it will deny the Proposed Intervenors' Motion to Intervene.

Accordingly, the Court **ORDERS** that the Motion to Intervene by Defenders of Wildlife, Biodiversity Legal Foundation, Conservation Action Project, Forest Ecology Network, Coastal Waters Project, David Carle, Charles Fitzgerald, Douglass Watts, and Arthur Taylor be, and it is hereby, **DENIED**.