State of NORTH DAKOTA,
et al., Plaintiffs,

v.

Beverly HEYDINGER, et. al, Defendants,

v.

Minnesota Center for Environmental
Advocacy, et al, Movants.

Civil No. 11–CV–3232 (SRN/SER).

United States District Court,
D. Minnesota.

Dec. 21, 2012.

John A. Knapp, Thomas H. Boyd, Daniel J. Kelly, and Brent A. Lorentz, Esqs., Winthrop & Weinstein, P.A., Minneapolis, MN; Casey Jacobson and Claire M. Olson, Esqs., Basin Electric Power Cooperative, Office of General Counsel, Bismarck, ND; David Sogard, Esq., Minnkota Power Cooperative, Inc., Grand Forks, ND; Wayne K. Stenehjem, Esq., Office of the Attorney General, State of North Dakota, Bismarck, ND; Sandra Tabor, Esq., The Lignite Energy Coun-

cil, Bismarck, ND; and William Taylor, Esq., Woods Fuller Schultz & Smith, Sioux Falls, SD, for Plaintiffs.

Lisa A. Crum and John S. Garry, Esqs., Office of the Attorney General, State of Minnesota, St. Paul, MN, for Defendants.

Elizabeth I. Goodpaster, Esq., Minnesota Center for Environmental Advocacy, St. Paul, MN, for Movants.

#### ORDER

STEVEN E. RAU, United States Magistrate Judge.

This case is before the Court on the Motion for Permissive Intervention of Minnesota Center for Environmental Advocacy, Environmental Law & Policy Center, Environmental Defense Fund, Sierra Club, Natural Resources Defense Council, Fresh Energy, and Izaak Walton League of America. [Doc. No. 33]. This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Motion is denied.

## I. BACKGROUND

### A. Minnesota's Next Generation Energy Act

The Minnesota legislature passed the Next Generation Energy Act ("NGEA") in 2007, establishing energy and environmental standards related to carbon dioxide emissions. 2007 Minn. Laws Ch. 136, art. 5, § 3. In part, the NGEA seeks to limit increases in "statewide power sector carbon dioxide emissions." Minn.Stat. § 216H.03, subd. 3. The statute provides that "[u]nless preempted by federal law" or "until a comprehensive and enforceable state law or rule pertaining to greenhouse gases that directly limits and substantially reduces, over time, statewide power

sector carbon dioxide emissions is enacted and in effect," no person shall:

(1) construct within the state a new large energy facility that would contribute to statewide power sector carbon dioxide emissions;

(2) import or commit to import from outside the state power from a new large energy facility that would contribute to statewide power sector carbon dioxide emissions; or

(3) enter into a new long-term power purchase agreement that would increase statewide power sector carbon dioxide emissions. For purposes of this section, a long-term power purchase agreement means an agreement to purchase 50 megawatts of capacity or more for a term exceeding five years.

*Id.* "Statewide power sector carbon dioxide emissions" are defined as "the total annual emissions of carbon dioxide from the generation of electricity within the state and all emissions of carbon dioxide from the generation of electricity imported from outside the state and consumed in Minnesota." *Id.* subd. 2. A "new large energy facility" is defined as "any electric power generating plant or combination of plants at a single site with a combined capacity of 50,000 kilowatts or more and transmission lines directly associated with the plant that are necessary to interconnect the plant to the transmission system." Minn.Stat. § 216B.2421, subd. 2(1).[1]

The prohibitions contained in Minn.Stat. § 216H.03, subd. 3 have some exemptions. Specifically, the bans in subdivision 3 do not apply "if the project proponent demonstrates to the Public Utilities Commission's satisfaction that it will offset the new contribution to statewide power sector carbon dioxide emissions with a carbon dioxide reduction project." *Id.* subd. 4. The carbon dioxide reduction project must:

offset in an amount equal to or greater than the proposed new contribution to

---

1. The following are not considered a "new large energy facility" under the law:

a facility that (1) uses natural gas as a primary fuel, (2) is designed to provide peaking, intermediate, emergency backup, or contingency services, (3) uses a simple cycle or combined cycle turbine technology, and (4) is capable of

achieving full load operations within 45 minutes of startup for a simple cycle facility, or is capable of achieving minimum load operations within 185 minutes of startup for a combined cycle facility.

Minn.Stat. § 216H.03, subd. 1.

statewide power sector carbon dioxide emissions in either, or a combination of both, of the following ways:

(1) by reducing an existing facility's contribution to statewide power sector carbon dioxide emissions; or

(2) by purchasing carbon dioxide allowances from a state or group of states that has a carbon dioxide cap and trade system in place that produces verifiable emissions reductions.

*Id.* subd. 4(b). The Minnesota Public Utilities Commission ("MPUC") must ensure that proposed carbon dioxide reduction projects are "permanent, quantifiable, verifiable, enforceable, and would not have otherwise occurred." *Id.* subd. 4(c). If the MPUC or the Minnesota Department of Commerce ("MDOC") "determines that any person is violating or about to violate this section, [either] may refer the matter to the attorney general who shall take appropriate legal action." *Id.* subd. 8.

## B. Procedural Background

On November 2, 2011, Plaintiffs filed a complaint against Minnesota's Attorney General Lori Swanson, five commissioners of the MPUC, and one Commissioner from the MDOC (collectively, "Defendants").[2] (Compl.) [Doc. No. 1]. Plaintiffs filed an amended complaint one month later. (Am. Compl.) [Doc. No. 9]. In Count I, Plaintiffs assert that Minn.Stat. § 216H.03, subd. 3(2)–(3) violates the Commerce Clause of the United States Constitution. (*Id.* ¶¶ 85–98). In Counts II and III, Plaintiffs claim that Minn.Stat. § 216H.03, subd. 3(2)–(3) violates the Supremacy Clause of the United States Constitution because the statute is preempted by the Clean Air Act, 42 U.S.C. § 7410 et seq. ("CAA") and the Federal Power Act, 16 U.S.C. § 791a et seq. ("FPA"). (*Id.* ¶¶ 99–

118). In Count IV, Plaintiffs allege that Minn.Stat. § 216H.03, subdivision 3(2)–(3) violates the Privileges and Immunities Clause of the United States Constitution. (*Id.* ¶¶ 119–27). In Count V, Plaintiffs seek a declaratory judgment that the FPA preempts Minn.Stat. § 216H.03, subd. 3(2)–(3). (*Id.* ¶¶ 128–33). In Count VI, Plaintiffs allege that Minn.Stat. § 216H.03, subd. 3(2)–(3) violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution. (*Id.* ¶¶ 134–43). Plaintiffs requested declaratory relief finding Minn.Stat. § 216H.03, subd. 3(2)–(3) unconstitutional and injunctive relief enjoining the enforcement of Minn.Stat. § 216H.03, subd. 3. (*Id.* at 39–40). Plaintiffs also requested an award of costs and expenses incurred in the litigation, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b). (*Id.* at 40).

On December 7, 2011, Defendants filed an Answer to the Amended Complaint and a Motion for Judgment on the Pleadings on Counts II through VI of the Amended Complaint.[3] (Defs.' Answer to Am. Compl.) [Doc. No. 10]; (Defs.' Mot. for Partial J. on the Pleadings) [Doc. No. 11]. Defendants also moved to dismiss the Minnesota Attorney General Lori Swanson as a party to this action. (Defs.' Mot. for Partial J. on the Pleadings at 28–30) Following supplemental briefing, Judge Susan Richard Nelson denied Defendants' Motion as to Counts II, III, and V; granted it as to Counts IV and VI; and granted it as to the dismissal of Minnesota's Attorney General. (Sept. 30, 2012 Mem. Op. and Order) [Doc. No. 32].

On November 26, 2012, Minnesota Center for Environmental Advocacy, Environmental Law & Policy Center, Environmental Defense Fund, Sierra Club, Natural Resources Defense Council, Fresh Energy, and Izaak Walton League of America (collectively,

**2.** The Plaintiffs are: the State of North Dakota; the Industrial Commission of North Dakota; the Lignite Energy Council, a North Dakota trade association; Basin Electric Power Cooperative, a non-profit whose core business is generating and transmitting wholesale electric bulk power to customers; the North American Coal Corporation, the largest lignite coal producer in the United States; Great Northern Properties Limited Partnership, an owner of land in North Dakota containing surface mineral lignite; Missouri Ba-

sin Municipal Power Agency d/b/a Missouri River Energy Services, an electric utility; and Minnkota Power Cooperative, Inc., a nonprofit Minnesota cooperative wholesale power provider to member owned distributors and cooperatives. (Compl.¶¶ 12–22).

**3.** Defendants answered the original Complaint on November 23, 2011. (Answer) [Doc. No. 8].

"Movants") jointly moved for permissive intervention into this action. (Mot. for Permissive Intervention of Minnesota Center for Environmental Advocacy, Environmental Law & Policy Center, Environmental Defense Fund, Sierra Club, Natural Resources Defense Council, Fresh Energy, and Izaak Walton League of America) [Doc. No. 33]. The Movants assert that they possess "expertise [which] will be useful to the Court in adjudicating this case and will assist the State of Minnesota in defending the NGEA." (Mem. of Law in Supp. of Mot. for Permissive Intervention of Minnesota Center for Environmental Advocacy, Environmental Law & Policy Center, Environmental Defense Fund, Sierra Club, Natural Resources Defense Council, Fresh Energy, and Izaak Walton League of America, "Movants' Mem.") [Doc. No. 35]. Defendants filed a brief in support of this Motion; only Plaintiffs oppose it. (Defs.' Mem. of Law in Resp. to Environmental Groups' Mot. to Intervene) [Doc. No. 43]; (Pls.' Mem. in Opp'n to Mot. for Permissive Intervention of Minnesota Center for Environmental Advocacy, Environmental Law & Policy Center, Environmental Defense Fund, Sierra Club, Natural Resources Defense Council, Fresh Energy, and Izaak Walton League of America, "Pls.' Mem.") [Doc. No. 44].

## II. DISCUSSION

Federal Rule of Civil Procedure 24 controls intervention. Rule 24 identifies two types of intervention: as of right and permissive. A court must grant a motion for intervention as of right where specific requirements are satisfied. Fed. R. Civ. Pro. 24(a) ("On timely motion, the court must permit anyone to intervene who …"). In contrast, permissive intervention under Rule 24(b)

vests broad discretion in the court to determine whether intervention is appropriate. Fed.R.Civ.P. 24(b) ("On timely motion, the court may permit anyone to intervene who …"). This Motion is for permissive intervention. Pursuant to the discretion Federal Rule of Civil Procedure 24(b) vests in the Court, the Motion is denied.

### A. Standing

█ As a preliminary matter, the Court considers whether Article III standing is required and, if so, whether Movants have established it.[4] *Brown v. Medtronic, Inc.,* 628 F.3d 451, 455 (8th Cir.2010) ("Federal courts must address questions of standing before addressing the merits of a case where standing is called into question."). In cases involving intervention as of right under Rule 24(a), the Eighth Circuit has held that "Article III standing is a prerequisite for intervention in a federal lawsuit." *Curry v. Regents of Univ. of Minn.,* 167 F.3d 420, 422 (8th Cir. 1999) (citation omitted); *see also Mausolf v. Babbitt,* 85 F.3d 1295, 1299 (8th Cir.1996). Most courts in this District require would-be intervenors under Rule 24(b) to establish Article III standing as well. *See Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad.,* No. 09–cv–138 (DWF/JJG), 2010 WL 1840301, at *7 (D.Minn. May 7, 2010); *Cobb v. U.S. Dep't of Educ.,* No. 05–cv–2439 (MJD/AJB), 2006 WL 2671242, at *2–3 (D.Minn. Sept. 18, 2006); *Vonage Holdings Corp. v. Minn. Public Utils. Comm'n,* No. 03–cv–5287 (MJD/JGL), 2004 WL 114983, at *2, 3 (D.Minn. Jan. 14, 2004); *Minn. Pub. Interest Research Grp. v. Selective Serv. Sys.,* 557 F.Supp. 923, 924 (D.Minn.1983). *But see In re Baycol Prods. Litig.,* 214 F.R.D. 542, 544 (D.Minn.2003) (finding reliance on *Planned*

4. The split among the Circuits regarding whether intervenors must possess Article III standing is well recognized by the courts and legal scholarship. *See, e.g., City of Chicago v. Fed. Emergency Mgmt. Agency,* 660 F.3d 980, 984–85 (7th Cir. 2011) (surveying the circuit split); *Dillard v. Chilton Cnty. Comm'n,* 495 F.3d 1324, 1337 n. 10 (11th Cir.2007), *cert. denied,* 554 U.S. 918, 128 S.Ct. 2961, 171 L.Ed.2d 886 (2008) (same); *Mangual v. Rotger–Sabat,* 317 F.3d 45, 61 (1st Cir.2003) (same); *Rio Grande Pipeline Co. v. Fed. Energy Regulatory Comm'n,* 178 F.3d 533, 538 (D.C.Cir.1999) (same); *see also* Joshua C. Dickin-

son, Note, *Standing Requirements for Intervention and the Doctrine of Legislative Standing: Will the Eighth Circuit "Stand" by Its Mistakes in Planned Parenthood of Mid–Missouri & Eastern Kansas, Inc. v. Ehlmann?,* 32 Creighton L.Rev. 983, 992 (1999); Amy M. Gardner, Comment, *An Attempt to Intervene in the Confusion: Standing Requirements for Rule 24 Intervenors,* 69 U. Chi. L.Rev. 681, 699–700 (2002); Tyler R. Stradling, Doyle S. Byers, *Intervening in the Case (or Controversy): Article III Standing, Rule 24 Intervention, and the Conflict in the Federal Courts,* 2003 B.Y.U. L.Rev. 419, 450 (2003).

*Parenthood of Mid–Missouri & Eastern Kansas, Inc. v. Ehlmann,* 137 F.3d 573 (8th Cir.1998), for proposition that intervenor must have standing was misplaced because the motion to intervene in Planned Parenthood was of right, not permissive as in *In re Baycol Products Litigation,* and noting that "[t]o date, the Eighth Circuit has not yet ruled on whether standing is a prerequisite for permissive intervention.").

▆▆ An analysis of standing is a fact-specific inquiry. *See Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ("Typically ... the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted."). "[R]esolution of standing issues tends to be a question of degree rather than kind." *See Sierra Club v. Watt,* 608 F.Supp. 305, 314 (D.C.Cal.1985). In this way, "determinations of standing are 'not susceptible of precise definition'"; indeed, standing runs along a continuum. *Id.* (citing *Allen,* 468 U.S. at 751, 104 S.Ct. 3315). On one end of that continuum are initiating parties, the proper plaintiffs and defendants—these parties have a clear stake in the litigation and its outcome. On the other end are strangers to the litigation, without a concrete, specific, vested interest in the matter.

Obviously, there is a difference between having the ability to initiate a lawsuit and being permitted to intervene. To decide whether a plaintiff may bring an action against a defendant requires determinations of whether the controversy is ripe for adjudication, the parties before the court are the real parties in interest, and the interests asserted are sufficient to mobilize the judicial machinery. When one seeks to permissively intervene in an ongoing lawsuit, however, these threshold questions have been resolved. The disposition of the request, then, should focus on whether the prospective intervenor has a sufficient stake in the outcome and enough of a stake to contribute to the resolution of the controversy to justify inclusion. Accordingly, a permissive intervenor's

standing lies somewhere along the standing continuum, but not at either end.

Movants have not identified the invasion of an interest sufficient to satisfy this Court that they possess adequate standing. Movants' interests in the reduction of carbon dioxide emissions and clean energy—though admirable—are generalized interests that conscientious members of society share. Further, simply because they purportedly have more experience litigating these issues does not merit an invitation to this litigation. If Movants are permitted intervene in this matter on these bases, where does the Court draw the line for future parties? Surely, the Federal Rules, the principles of judicial economy, and the existing complexity of modern day litigation call for a standard applicable to intervention that requires more than an opinion about the proper outcome and an experienced litigant. Thus, Movants lack the proper standing ordinarily required in this District to entitle them to permissively intervene in this matter. Further, as discussed below, Movants do not satisfy the specific requirements of Federal Rule of Civil Procedure 24(b).

**B. Permissive Intervention**

▆▆ Rule 24(b) provides in relevant part:

> On timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b). "The decision to grant or deny a motion for permissive intervention is wholly discretionary." *S.D. ex rel. Barnett v. U.S. Dep't of Interior,* 317 F.3d 783, 787 (8th Cir.2003); 7C Wright, Miller & Kane, Federal Practice and Procedure § 1913, at 376–77 ("If there is no right to intervene under Rule 24(a), it is wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow interven-

tion.") (footnote omitted). In deciding whether to grant permissive intervention, courts considers three factors: (1) whether the motion to intervene is timely; (2) whether the applicant's claim shares a question of law or fact in common with the main action; and (3) whether intervention will unduly delay or prejudice adjudication of the original parties' rights. *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 245 F.R.D. 632, 635 (D.Minn.2007). In addition, although it "is only a minor variable in the Rule 24(b) decision calculus," the adequacy of protection afforded to the prospective intervenors by the existing parties is a legitimate consideration. *S.D. ex rel. Barnett*, 317 F.3d at 787 (citations omitted).

Even though Movants' motion is timely and contains questions of law and fact in common with the case, it fails on the primary consideration because it would result in prejudice and delay. Furthermore, Movants' intervention in this matter is unnecessary, as Defendants adequately represent their common interests. Movants' presence would not further any interests of justice and would simply serve to delay and overcomplicate this matter. Also, notwithstanding Movants' statements at the hearing on this matter, their intervention would change the complexion of this case—transforming it from a constitutional question to an environmental policy issue. Movants had the opportunity to engage in policy discussion at the legislative level when statute was researched, argued, and adopted. Defendants now are best situated to defend the enacted legislation and the public's interests in it. Accordingly, the Court concludes that Movants' Motion for intervention under Rule 24(b) should be denied.

### i. Timeliness of Motion

■■■■ The timeliness of a motion to intervene is a decision within the district court's discretion. *Minn. Milk Producers Ass'n v. Glickman*, 153 F.3d 632, 646 (8th Cir.1998). That decision should be based on all of the circumstances, but courts particularly consider four factors: (1) the extent the litigation

has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties. *Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1094 (8th Cir. 2011) (citations omitted). The parties do not contest the timeliness of the Motion. The Movants explained at the hearing that they waited to intervene until the Court resolved the Defendants' Motion for Partial Judgment on the Pleadings. Although more than a year has passed since Plaintiffs filed the Amended Complaint, the parties have not engaged in a Rule 16 conference or discovery.[5] (Movants' Mem. at 13). The Motion is timely.

### ii. Question of Law or Fact in Common with the Underlying Action

Neither party disputes that Movants' claims share questions of law and fact in common with the main action. (Movants' Mem. at 11–12); (Pls.' Mem. at 5–10); (Reply in Supp. of Mot. for Permissive Intervention of Minnesota Center for Environmental Advocacy, Environmental Law & Policy Center, Environmental Defense Fund, Sierra Club, Natural Resources Defense Council, Fresh Energy, and Izaak Walton League of America, "Movants' Reply") [Doc. No. 50 at 1–2]. Specifically, like Defendants, Movants seek to defend the constitutionality of NGEA against claims that it offends the Dormant Commerce Clause and is preempted by the Clean Air Act and Federal Power Act. (Movants' Mem. at 1, 11); (Proposed Answer of Minnesota Center for Environmental Advocacy, Environmental Law & Policy Center, Environmental Defense Fund, Sierra Club, Natural Resources Defense Council, Fresh Energy, and Izaak Walton League of America to Pls.' Am. Compl.) [Doc. No. 38]. That defense is directly tied to the primary issue in this case: whether the NGEA runs afoul of the federal Constitution. The second requirement of Rule 24(b) is satisfied.

---

5. The Pretrial Scheduling Conference in this matter is scheduled presently for January 16, 2013. (Notice of Pretrial Scheduling Conference) [Doc. No. 40]; (Notice of Resetting of Hearing) [Doc. No. 41].

### iii. Undue Delay or Prejudice Caused

 "The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *S.D. ex rel. Barnett*, 317 F.3d at 787 (citations omitted). "[N]o judicial economy is gained by allowing the movants to intervene for the purpose of presenting defenses or arguments that can be or already have been presented by the Defendants. Permissive intervention [in that situation] . . . would only serve to delay and unfairly prejudice the rights of the original parties." *Vonage Holdings, Corp. v. Neb. Pub. Serv. Comm'n*, 543 F.Supp.2d 1062, 1070 (D.Neb.2008) *aff'd sub nom., Vonage Holdings Corp. v. Neb. Pub. Serv. Comm'n*, 564 F.3d 900 (8th Cir.2009).

 Like Defendants, Movants intend to "intend to defend the constitutionality of Minnesota's Next Generation Act ("NGEA"), Minn.Stat. § 216H.03." (Movants' Mem. at 1). Movants urge the Court to grant them permissive intervention because they may offer a purportedly unique perspective to the case: "Based on [the Movants'] experiences advocating for and defending the enactment and implementation of laws promoting renewable energy sources and reducing greenhouse gas pollution, the [Movants] are knowledgeable about the purposes, design and implementation of state laws like Minnesota's NGEA." (Movants' Mem. at 6). Substantively, Movants claim to have "extensive knowledge of the electric sector" and "Clean Air Act expertise" based on their role in similar proceedings around the country. (Movants' Mem. at 8–9). In addition, the Movants argue that they have "significant experience litigating Dormant Commerce Clause challenges to state environmental legislation, specifically greenhouse gas reduction legislation." (Movants' Mem. at 6). In sum, Movants suggest that their participation in the case could "provide important legal, regulatory implementation, technical and factual information relevant to the Court's consideration of how the NGEA works, how a ruling might potentially affect other legislation and clean energy policies in Minnesota and around the country, and how this legislation should be evaluated under the governing constitutional standards." (*Id.* at 9). They also cite the health and environmental concerns of their members. (*Id.* at 10).

As noted above, the Court agrees with Movants' assertion that their defenses share questions of law or fact in common with those in this case. In fact, Movants' stated objective—to uphold the constitutionality of the statute—is indistinguishable from that of Defendants. (Movants' Mem. at 1); (Defs.' Answer to Pls.' Am. Compl.). The proposed answer demonstrates the similarities between the claims of Movants and Defendants. It relies heavily on the language and assertions made in the Answer to present the same defense. ([Proposed] Answer of Minnesota Center for Environmental Advocacy, Environmental Law & Policy Center, Environmental Defense Fund, Sierra Club, Natural Resources Defense Council, Fresh Energy, and Izaak Walton League of America) [Doc. No. 39]; (Defs.' Answer to Pls.' Am. Compl.). Indeed, Defendants have already asserted the defenses Movants intend to raise.

This instant case does present the same concerns as *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir.2002), a case on which Movants rely. There, the Kootenai Tribe, along with several recreation groups, livestock companies, and two Idaho counties, filed suit in the United States District Court in the District of Idaho alleging that the "Roadless Rule," a federal law providing regarding development in national forests, violated the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA"). *Id.* at 1104. The day after plaintiffs filed their complaint, the state of Idaho and some state officials filed a separate complaint in the District of Idaho stating similar allegations. *Id.* Environmental groups intervened as defendants in both cases. *Id.* Judges on both cases granted plaintiffs' motions for preliminary injunction against the implementation of the Roadless Rule. *Id.* Although the federal defendants did not appeal those determinations in either case, the intervenors appealed both and the Ninth Circuit consolidated the cases. *Id.* Given this "unusual procedural setting," the

court first addressed whether the intervenors' defense of the government's alleged violations of the NEPA and APA was appropriate, given the government's decision to not appeal the injunction. *Id.* at 1107. It posited, "if the federal government no longer contests the plaintiffs' positions and the court's ruling, may interested persons as intervenors defend the challenged process?" *Id.* The court concluded that intervention under Rule 24(b) was proper because "the government declined to defend fully from the outset, suggesting that the government itself saw problems and wanted to amend the Roadless Rule." *Id.* at 1111. Under those circumstances, it was "clear ... that the presence of intervenors would assist the court in its orderly procedures leading to the resolution of this case, which impact[s] large and varied interests." *Id.* Here, Defendants have fully defended against Plaintiffs' claims, asserting precisely the same defenses Movants wish to proffer. Movants' presence here would not allow for the representation of undefended interests as the intervention in *Kootenai Tribe of Idaho* did.

Given the parallel goals and defenses of Defendants and Movants, combined with Defendants' demonstrated willingness and capacity to present those defenses, the resolution of this case will not be enhanced in any significant way through the permissive intervention of Movants. Rather, adding seven additional parties to duplicate arguments would only be a source of repetition and delay, and complicate the proceedings without advancing additional rights. *See Standard Heating & Air Conditioning,* 137 F.3d 567, 573 (8th Cir.1998); *Me. v. Norton,* 203 F.R.D. 22, 29–30 (D.Me.2001).

### iv. Adequacy of Representation by Defendants

 Although the adequacy of the existing parties' representation of a prospective intervenor's interest is not explicitly provided for in Rule 24(b) as it is in Rule 24(a), it may still factor into the determination of whether intervention is appropriate. *See S.D. ex rel. Barnett,* 317 F.3d at 787. Movants suggest Defendants cannot adequately represent their interests. (Movants' Reply Mem. at 3–4). Likewise, Defendants claim also that

"the interests of a governmental defendant may not be the same as non-governmental organizations, specifically environmental groups, because a government defendants represents a broad public interest whereas the interest of environmental groups are more focused." (Defs.' Mem. at 3).

 Under the doctrine of *parens patraie,* "when a government entity is a party and the case concerns a matter of sovereign interest, the government is presumed adequately to represent the interests of the public." *Curry,* 167 F.3d at 423 (citing *Mausolf,* 85 F.3d at 1303). This presumption may be rebutted by a "strong showing of inadequate representation." *Id.* For example, if Movants could show that their interests cannot be subsumed within the public interest represented by the government entity, intervention may be appropriate. *Id.* In *Mausolf,* the court granted an environmental group's motion to intervene because it found the government's interest in promoting recreational activity and tourism conflicted with the intervenor's conservation interests. 85 F.3d at 1304.

The Minnesota legislature specifically chose and explicitly provided for Defendants MPUC, MDOC, and the attorney general as the proper parties to enforce the NGEA. Minn.Stat. § 216H.03, subd. 8. Defendants and Movants share the same ultimate objective: to uphold NGEA against constitutional attack. Movants attempt to distinguish their interests by focusing on environmental and health concerns potentially impacted if the statute is not upheld. Nevertheless, the Defendants' interests in defending the NGEA—which ultimately protects the environmental and health concerns Movants cite—encompass Movants' asserted interests. Parsing the ends of the statute from the means does not create a unique interest. Accordingly, Movants fail to establish a "strong showing" to overcome the presumption because their interests are subsumed by those of the Defendants.

While there is no need to add additional parties to the dispute at this time, Movants may, at some point in the litigation, offer a perspective or arguments different from those of the parties that may indeed be help-

432

ful to the fair and just resolution of the issues presented in this case. If such a situation should arise, they may request participation as *amici curiae* to allow for the presentation of those positions to the Court.

## III. CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Motion for Permissive Intervention of Minnesota Center for Environmental Advocacy, Environmental Law & Policy Center, Environmental Defense Fund, Sierra Club, Natural Resources Defense Council, Fresh Energy, and Izaak Walton League of America [Doc. No. 33] is **DENIED.**